529 A.2d 1220

Olimpia Fetfatzes and J & M Dogs, Inc., Appellants *v.* City of Philadelphia and its Department of Licenses & Inspections, Appellees.

Argued June 12, 1987, before Judge COLINS, and Senior Judges BARBIERI and NARICK, sitting as a panel of three.

*Jerome R. Balka,* for appellants.

*Flora Barth Wolf,* Deputy City Solicitor, with her, *Handsel B. Minyard,* City Solicitor, for appellees.

OPINION BY SENIOR JUDGE NARICK, August 20, 1987:

Olimpia Fetfatzes and J & M Dogs, Inc. (hereinafter collectively referred to as Appellants) appeal from an order of the Court of Common Pleas of Philadelphia which denied Appellants' motion for preliminary injunction. We affirm.

The relevant facts are as follows. Appellants filed a complaint in equity on June 24, 1985 and a motion for preliminary injunction on June 25, 1985 seeking to enjoin the City of Philadelphia and the Department of Licenses & Inspections (hereinafter collectively referred to as the City), from prohibiting Appellants from operating their hotdog vending stands on Fourth Street

between Market and Chestnut Streets in Philadelphia. Appellants have been licensed by the City to conduct hotdog vending businesses for a number of years,[1] and have always conducted their hotdog vending businesses during this time on the sidewalks of Fourth Street between Market and Chestnut Streets.

In Philadelphia, all sidewalk vending businesses are regulated by the City. Section 9-205(3) of the Philadelphia Code provides that no person shall engage in the business of sidewalk selling without first obtaining a license. Once the license is issued, a sidewalk vendor may sell his goods at any location not specifically prohibited by Section 9-205(8)(p).[2]

On February 14, 1985, Bill No. 463 (463) was introduced into the City Council and referred to the City Council's Committee of Licenses & Inspections.[3] The effect of 463 was to amend Section 9-205(8)(p) of the Code to add Fourth Street between Market and Chestnut Streets to the list of prohibited vending locations. On April 2, 1985, notice that a public hearing was to be held on 463 was published in four newspapers: The Philadelphia Inquirer, The Philadelphia Daily News,

---

[1] The record indicates that both Appellants conducted their business on Fourth Street between Market and Chestnut Streets for a period exceeding ten years.

[2] In pertinent part, Section 9-205 of the Philadelphia Code provides:

(8) *Prohibited Conduct.* No vendor or person shall:

(p) exhibit, display, offer for sale or sell any goods, wares, or merchandise or place or allow any stand to remain on the sidewalks of the following streets or any other locations which the council from time to time ordain:

. . .

Section 9-205(8)(p) then lists approximately fifty-three locations where sidewalk vending is prohibited.

[3] The record indicates that 463 was introduced into City Council by private request of a citizen or group of citizens.

The Philadelphia Tribune and The Legal Intelligencer. On April 16, 1985, notice that 463 was reported from the Committee of Licenses & Inspections was· published in the same four newspapers. The City Council passed 463 on April 25, 1985, and on May 9, 1985, 463 was approved by the Mayor of Philadelphia.

During the week of June 10, 1985, Appellants were ordered to remove their vending carts from their usual locations which were now prohibited pursuant to 463. Appellants received a temporary restraining order allowing their vending carts to remain at their usual location, and on July 1, 1985, a hearing was,held in order to determine whether an injunction should continue against the City. The trial court denied the injunction. Hence, this appeal.

On appeal, the validity of 463 is not challenged by Appellants.[4] Rather, Appellants challenge the adoption of 463 and its effect on Appellants as a deprivation of their due process rights because: (1) notice by publication was not sufficient to satisfy the procedural due process requirements of the United States Constitution as well as the statutory requirements of Section 2.2-201 of the Philadelphia Home Rule Charter; (2) 463 effectively revoked Appellants' licenses to vend and thus effectively deprived Appellants of their right to engage in the business of vending; and (3) 463 in effect violated Appellants' legitimate expectations that their licenses would be renewed for the following year as long as Appellants operated their businesses in a lawful manner.[5]

---

[4] It is well settled that the City of Philadelphia has authority to regulate and control the City streets and sidewalks. *See 46 South 52nd Street Corp. v. Manlin,* 398 Pa. 304, 157 A.2d 381 (1960) and *Delaware River Joint Commission Case,* 342 Pa. 119, 19 A.2d 278 (1941).

[5] It should be noted that the instant matter is an interlocutory appeal as of right which is reviewable by this Court pursuant to Pa. R.A.P. 311(a)(4).

In order for a court to grant a preliminary injunction, five conditions must be met:

(1) the relief is necessary to prevent immediate and irreparable harm which cannot be compensated by damages;

(2) greater injury will occur from refusing the injunction than from granting it;

(3) the injunction will restore the parties to the status quo as it existed immediately before the alleged wrongful conduct;

(4) the alleged wrong is manifest and the injunction is reasonably suited to abate it; and

(5) the plaintiff's right to relief is clear.

*T. W. Phillips Gas and Oil Co. v. People's Natural Gas Co.,* 89 Pa. Commonwealth Ct. 377, 492 A.2d 776 (1985); *Adler v. Township of Bristol,* 83 Pa. Commonwealth Ct. 72, 475 A.2d 1361 (1984).

In denying the request for injunction, the trial court reasoned:

There is no doubt that the ordinance was advertised in accordance with the law. The bill prohibits all vending in the area and is not limited in any way to the plaintiffs [appellants] . . . There is nothing in the law which requires either individual notice to the plaintiffs because they were there or any additional notice other than the advertisements. Individual notice of such enactments is not required by due process.

. . .

Section 2.2-201(5) of the Philadelphia Home Rule Charter provides:

Notice of public hearings on bills and notice of bills reported from committee shall be given by advertising in the three daily newspapers of the City having the largest paid circulation, the title of the bill; and in the case of a public hearing,

the time and place of the hearing, not less than five days before the public hearing or before the bill comes up for final consideration, as the case may be. In addition, such other notice may be given as will bring public hearings or reported bills to the attention of interested citizens. There need be no advertisement of ordinances after their passage.

Thus, although the Philadelphia Home Rule Charter only requires publication in three newspapers, it does indicate that additional notice *may* be given which will afford notice to interested citizens.

However, Appellants further argue that the City should have, under the circumstances, taken additional steps to ensure notice to Appellants. We must reject this argument. In the enactment of legislation which applies to more than a few people, it would be impracticable to require everyone to have a direct voice in the adoption of legislation. If we were to adopt Appellants' contentions, then every time legislation which may limit an individual's right is adopted, individual notice to that person would be required. *See Bernitsky v. The County of Schuylkill,* 381 Pa. 128, 112 A.2d 120 (1955). It was stated in *Bi-Metallic Investment Co. v. State Board of Equalization,* 239 U.S. 441 (1915):

The Constitution does not require all public acts to be held in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, some times to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.

A similar rationale can be found in *Trager v. Peabody Redevelopment Authority,* 367 F. Supp. 1000 (1973) (D. Mass.):

> The procedural due process requirements of notice and hearing attach themselves wherever there is need for an adjudicative hearing, i.e., when an individual or a small number of persons suffer a particular loss under circumstances peculiar to each individual or group. However, where a hearing body, as a delegatee of the Legislature, is weighing general information and ideas affecting relatively large numbers of people, that body is considering *legislative* facts. At such a legislative hearing, the hearing body is determining the best overall public policy and is not concerned with the particular problems of individuals. These legislative hearings do not require notice of an opportunity to be heard to individuals whose rights are affected as a part of an overall scheme to benefit society in general.

Thus, Appellants were not entitled to individual notice or notice in addition to the publication in the four newspapers. It cannot be disputed that 463 applies to *all* vendors not just Appellants. Therefore, to require individual notice would mean notice to all vendors or respective vendors as well as those individuals who could ultimately contend that their individual interests are affected. It is clear such notice is not required regarding the passage of legislation. Furthermore, all applicants for vending licenses are provided with a pamphlet by the City which indicates vending may be conducted on any street not prohibited by ordinance. In addition, the vendor's right to do busines is also subject to the permission of the abutting landowners. *46 South 52nd Street Corp.* Thus, the City cannot grant a vendor a specific location, nor can the vendor be guaranteed he

will always have the right to do business at a specific location.

Appellants next contend that 463 deprives them of their Fourteenth Amendment right to engage in a common occupation, *i.e.* the business of vending. More specifically, Appellants argue 463 effectively revoked their licenses and violated their expectations that their licenses would be renewed each year as long as they conducted their business in a lawful manner. Appellants cite numerous cases in support of their position. However, after reviewing the cases cited by Appellants, we observe that these cases involve license revocations. In the case at hand, no license revocations occurred. Appellants are free to conduct business at any location not prohibited by ordinance. Therefore, we see no evidence of record to indicate that Appellants will suffer irreparable harm. Moreover, we must also reject Appellants' arguments that they had a reasonable expectation that their license would be renewed each year. In *Board of Regents v. Roth,* 408 U.S. 564 (1972), it was held that a university professor hired for a term of one year was entitled to no more than the one year term of employment and the university's decision not to rehire him did not infringe upon the professor's Fourteenth Amendment rights. Thus, although the Fourteenth Amendment denotes a "right to engage in the common occupations of life", *Roth* at 572-73 citing to *Meyer v. State of Nebraska,* 262 U.S. 390 (1923), Appellants' rights to do business were not infringed upon in violation of the Fourteenth Amendment. No stigma or disability foreclosed on Appellants' freeedom to take advantage of the vending business in another location nor were Appellants prohibited by the ordinance from engaging in their occupation. *See Roth* at 573. Although we recognize that Appellants conducted their businesses in the same location for a number of years and most likely de-

560

veloped regular clientele, that is a risk to be assumed by the nature of the vending business. Just the same, if the abutting landowner had decided to prohibit Appellants' vending businesses, they would have no grounds to contest the landowner's decision. *See 46 South 52nd Street Corp.*

Therefore, for the reasons set forth herein, we conclude that Appellants have no clear right to relief, and accordingly we will affirm the order of the trial court.

ORDER

AND NOW, this 20th day of August, 1987, the order of the Court of Common Pleas of Philadelphia in regard to the above-captioned matter is affirmed.

Judge COLINS dissents.