Gene SCOTT, Appellant

v.

**CITY OF PITTSBURGH and
University of Pittsburgh.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 10, 2006.
Decided July 19, 2006.

Joseph J. Chester, Pittsburgh, for appellant.

George R. Specter, Pittsburgh, for appellee, City of Pittsburgh.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

Gene Scott (Vendor) appeals from an order of the Court of Common Pleas of Allegheny County, which, *inter alia*, sustained preliminary objections filed by the City of Pittsburgh[1] (City) to a Complaint he filed when the Pittsburgh City Council did not include the location where he had customarily operated a hotdog stand as an approved vending site.

By Ordinance Amendments passed on October 17, 2000, the Pittsburgh City Council revised the City's licensing scheme for the operation of vendors and peddlers (Vending Ordinance), after which licensed vendors could no longer operate anywhere within the City, but were limited to locations approved by the City Council. (Trial Ct. Ex. "A".) The Vending Ordinance provided for the selection of permitted locations as follows:

> [b]ased upon sites reviewed and approved by the Council of the City of Pittsburgh, the Director of the Department of Public Works or his/her assign

shall compile a list of permitted locations where the presence of vending units . . . would be compatible to the public interest. . . . The Director may modify the list as he/she deems necessary with approval from the Council.

(Ordinance § 719.05A(a).) The Vending Ordinance also provides for the establishment of "vending districts" and the allowance of input, regarding the operation of vending carts within a particular vending district, through a provision that reads:

> At the promulgation of City Council, the Bureau of Building Inspection, or at the urging of community or business organizations, vendor districts, areas within a particular and contiguous geographic area, may be established in which the particulars of this ordinance may be lifted or amended by Council resolution. At the time vendor districts are established representatives of merchants, community groups, and vendors will be called upon in order to give input regarding appropriate vending activities.

(Ordinance § 719.05A(c).) In addition, the Vending Ordinance, in a section entitled Permit Application and Duration and cited by Vendor, also provides that:

> [v]endors who have been operating at a particular location prior to the adoption of [the new Ordinance] shall be provided an opportunity for first preference to continue their operation provided that they have been in compliance with all previous regulations and obligations and City Council designates the location as a permitted site.

(Ordinance § 719.05B(d).)

By a separate Resolution, which was also passed on October 17, 2000, the Pittsburgh City Council established the "Street

---

1. The University of Pittsburgh also filed preliminary objections to Vendor's complaint, which the trial court sustained. Upon request of Vendor, this Court entered a Notice of Discontinuance for the University of Pittsburgh on December 22, 2005.

and Sidewalk Vending Site Designation Committee"[2] (Site Designation Committee) to:

a) Prepare for public advertising and general notification to the community a formal announcement that City Council is requesting recommendations for specific vending ... locations within the boundaries of the City of Pittsburgh from the general public and those directly involved in the business of street and sidewalk vending.

b) [C]ompile a list of all recommendations for vending and vehicular vending sites and submit to City Council ... a report including exact locations and the Committee[']s evaluation of the site appropriateness.

(Pittsburgh City Council Resolution 756, Vol. 134 (Oct. 17, 2000) ("Resolution") § 3 (enacted).) Pursuant to the Resolution, the Site Designation Committee was to meet two weeks after passage of the Resolution and submit a list of recommendations to City Council by December 1, 2000. (Resolution § 3.) City Council was to adopt an ordinance, no later than January 1, 2001, specifically listing each site where street and sidewalk vending would be permitted by the Vending Ordinance. (Resolution § 4.)

Since 1992, Vendor legally operated a licensed "New-York style hot-dog vending cart" outside the University of Pittsburgh's Hillman Library (customary site). (Vendor Complaint ¶¶ 8–10.) When the Site Designation Committee ultimately submitted its list of recommended sites to City Council, the list did not include Vendor's customary site in front of the library.

Vendor apparently, twice, wrote requesting that his customary site be included on the list of recommended sites. We have no copies of these letters, and we do not know to whom the letters were sent, the dates on which the letters were sent, or their contents. In response to Vendor's second letter, the City Clerk, by letter dated March 27, 2002, referenced its earlier correspondence to Vendor and informed him that the "Vending Site Designation Committee met on February 28, 2002 to discuss [his] nomination of a permanent vending site ... [but t]his site was denied."[3] (Letter from Linda M. Johnson–

---

2. The Site Designation Committee is comprised of the: (a) President of City Council, (b) City Clerk, (c) Director of the Department of Public Works, (d) Bureau Chief of Building Inspection, (e) Director of the Department of City Planning, (f) Director of the Parking Authority, and (g) Director of the Department of Parks and Recreation. (Resolution § 1.)

3. The body of the March 27, 2002 letter, in its entirety, reads:

Please be advised that the Vending Site Designation Committee met on February 28, 2002 to discuss your nomination of a permanent vending site at [your customary site]. This site was denied. As you are aware, the Committee had already discussed and denied your previous nomination, and a letter was forwarded to you (copy attached).

The reasons stated by the representative of the Vending Committee include the fact that representatives from the University of Pittsburgh and many community organizations in the Oakland community, as well as former Council Representative Dan Cohen, and newly elected Council Representative Bill Peduto, met to discuss a comprehensive plan for permanent vending sites in the area. The site in front of the Hillman Library [ (Vendor's customary site) ] was debated, but ultimately was not included in the overall recommendations. However, many alternative sites were approved and to date, several openings still exist. You may apply at the Bureau of Building Inspection.

I hope this information is helpful to you. (Letter from Linda M. Johnson–Wasler, Pittsburgh City Clerk, to Vendor (March 27, 2002), Ex. 1 to Vendor's Compl.) A copy of the previous letter, however, was *not* attached to the Exhibit.

Wasler, Pittsburgh City Clerk, to Vendor (March 27, 2002).)

After receiving this letter from the City Clerk, Vendor filed a Complaint against the City of Pittsburgh and the University of Pittsburgh wherein he averred, *inter alia*, that (1) the City violated his right to due process by depriving him of a property right for the continued operation of his hotdog stand at his customary site, and (2) the City violated his right to due process and the rights provided by the Local Agency Law[4] by not providing an evidentiary hearing prior to issuing the letter from the City Clerk advising him that the Site Designation Committee had denied his written request to include his customary site as a permitted area for vendors.

In response to Vendor's complaint, the City filed preliminary objections averring, *inter alia*, that no action by the City can be construed as a violation of Vendor's constitutional rights, and the Vendor was not entitled to a Local Agency Law hearing, pursuant to 2 Pa.C.S. § 553, because City Council's failure to approve Vendor's location as a vending site was a non-appealable legislative determination and not an adjudication. (Prelim. Objections of City (PO) ¶¶ 16–18.)

The trial court sustained the City's preliminary objections and dismissed Vendor's complaint with prejudice. The trial court, in a subsequently issued opinion, reasoned that Vendor has no property right or due process interest in a vending location and that, "[u]nder Pennsylvania law, City Council has the right to determine where in the city vendors shall be permitted to operate." (Trial Ct. Op. at 4.) The trial court also ruled that Vendor was not entitled to a local agency hearing, because City Council is not a local agency and its legislative determination was not reviewa-

ble as a statutory appeal from a local agency decision. (Trial Ct. Op. at 4.)

Vendor raises two issues on appeal to this Court: (1) whether Vendor was deprived of a constitutionally protected property right to operate his hotdog stand at his customary site; and (2) whether Vendor was entitled to an evidentiary hearing prior to City Council's decision, based on the recommendation of the Site Designation Committee, to deny his application for a permanent vending spot.

 This Court's review of a trial court's decision sustaining preliminary objections in the nature of a demurrer is limited to whether, on the facts averred, the law states with certainty that no recovery is possible. *Hawks by Hawks v. Livermore*, 157 Pa.Cmwlth. 243, 629 A.2d 270, 271 n. 3 (1993). This Court must accept as true all well-pleaded allegations and material facts averred in the complaint, as well as reasonable inferences therefrom, and any doubt should be resolved in favor of overruling the demurrer. *Id.*

 The first issue is whether Vendor was deprived of a constitutionally protected property right to operate his hotdog stand at his customary site. This issue has previously been addressed by both this Court and the federal courts, which have determined that a vendor does not have a constitutionally protected property right to operate a vending or peddling cart in a particular location.

The City of Philadelphia's passage of an ordinance restricting operation of vending stands at previously acceptable locations caused two vendors to challenge the ordinance in *Fetfatzes v. City of Philadelphia*, 108 Pa.Cmwlth. 552, 529 A.2d 1220 (1987). In *Fetfatzes*, the appellants were licensed hotdog vendors, who had operated their

---

4. 2 Pa.C.S. §§ 551–555, 751–754.

stands for over ten years at the same location on Fourth Street, between Market and Chestnut Streets. Prior to the adoption of the new ordinance, the City allowed vendors, once licensed, to operate "at any location not specifically prohibited by [Philadelphia city ordinance]." *Id.* at 1224. The new ordinance added the vendors' customary site on Fourth Street, between Market and Chestnut, to the list of prohibited vending locations. The vendors argued that the City violated their due process rights because the new ordinance "effectively deprived Appellants of their right to engage in the business of vending . . . ." *Id.* at 1222. This Court rejected that argument, and found no violation of a right to due process, because the new ordinance continued to allow those vendors to operate their vending business in other locations, and in no way prohibited the vendors from engaging in their occupation, just not at the particular location they desired. *Id.* at 1224. The Court reasoned, "[a]lthough we recognize that [the vendors] conducted their businesses in the same location for a number of years and most likely developed regular clientele, that is the risk to be assumed by the nature of the vending business." *Id.* at 1224. Thus, this Court found that the City of Philadelphia could prohibit the operation of vending carts at a customary location without offending a vendor's due process rights.

Similarly, in *Lindsay v. City of Philadelphia*, 863 F.Supp. 220 (E.D.Pa.1994), a group of licensed sidewalk vendors filed a complaint against the City of Philadelphia after the City amended its ordinance to limit sidewalk vending in Center City to 300 vendors who were chosen based solely on seniority. The appellants were not chosen to be one of the 300 permitted vendors. In their complaint, the vendors alleged that the ordinance amendments deprived them of a property interest without

due process of the law. To survive summary judgment in a claim for deprivation of property without due process, the United States District Court, in *Lindsay*, concluded that the complaining party must have a protected property interest and have been deprived of that protected interest without sufficient due process. *Id.* at 224. In granting summary judgment, the court reasoned that, while the vendors, because of their lack of seniority, were not among the 300 vendors permitted to operate in Center City, they were still permitted to operate anywhere else in the City of Philadelphia. *Id.* at 222. The Court further reasoned that, while the vendors may have a property right in the retention of their licenses, they had no protected property interest in their prior locations in Center City because the license under which they previously operated did not entitle them to any particular location and was, in fact, not revoked by the ordinance amendments. The Court concluded, "[b]ecause the [vendors] do not have a protected property interest in their customary vending locations and have not lost their right to vend elsewhere in the City, they have no claim for deprivation without due process." *Id.* at 224.

Just as in *Fetfatzes* and *Lindsay*, here, Vendor has a general license that permits him to operate a vending business in the City, but does not entitle him to operate in his customary site outside the library. As we said in *Fetfatzes*, "[a]lthough we recognize that [the vendors] conducted their businesses in the same location for a number of years and most likely developed regular clientele, that is the risk to be assumed by the nature of the vending business." 529 A.2d at 1224. We are bound by our precedent and, therefore, find that Vendor has not shown that he has a constitutionally protected property

right to operate his vending cart at his customary site.

Vendor next argues that the Local Agency Law afforded him the right to an evidentiary hearing prior to the Site Designation Committee's decision to deny his nomination of his customary site as a permanent vending site.

■ Vendor argues that he was entitled to such an evidentiary hearing and, in support, but without discussion, application, or analysis, cites to Section 101 of the Local Agency Law, 2 Pa.C.S. § 101, *Bruno v. Zoning Board of Adjustment of City of Philadelphia*, 664 A.2d 1077 (Pa.Cmwlth. 1995) and *City Council of City of Pittsburgh v. City of Pittsburgh*, 155 Pa. Cmwlth. 328, 625 A.2d 138 (1993) for the proposition that the Site Designation Committee's March 27th letter was a reviewable adjudication under Local Agency Law, and that the trial court's conclusion that the action of the Site Designation Committee was a non-reviewable legislative action is not supported by the Local Agency Law.[5]

■ Section 5 of the Local Agency Law provides in relevant part:

No adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard.

2 Pa.C.S. § 553. An adjudication is defined in Section 101 of the Administrative Agency Law as follows:

Any final order, decree, decision, determination or ruling by an agency *affecting personal or property rights,* privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made.

2 Pa.C.S. § 101 (emphasis added.) Only decisions of local agencies that affect a "personal or property right" are appealable under Section 553 of the Local Agency Law, 2 Pa.C.S. § 553, which requires an evidentiary hearing before the issuance of an adjudication. *See Olson v. Borough of Avalon*, 811 A.2d 66, 70 n.7 (Pa.Cmwlth. 2002) (holding that probationary police officer had no property interest in continued employment and the borough's decision to terminate him was not an appealable adjudication under the Local Agency Law).

As previously discussed under our precedent, Vendor did not have a property right in operating his vending cart at his customary site. Therefore, the decision not to include his customary site on the list did not affect a property right, and, under the Local Agency Law, he was not entitled to an evidentiary hearing.[6]

---

**5.** In his brief to this Court, Vendor's argument, in its entirety, is as follows:

[Vendor] has due process rights to continue to operate his hot dog vending cart. The final decision of March 27, 2002 of the site designation committee was a review-able [sic] adjudication under local agency law affecting property. The City of Pittsburgh is a local agency. The trial Court's conclusion that the action of the site designation committee was a non-reviewable legislative enactment is not supported by local agency law.

(Vendor Br. at 3 (citations omitted).)

**6.** Like the City in its brief to this Court, we note that the reason for Vendor's citation to, and his application of, *Bruno v. Zoning Board of Adjustment of City of Philadelphia,* 664 A.2d 1077 (Pa.Cmwlth.1995) and *City Council of City of Pittsburgh v. City of Pittsburgh*, 155 Pa.Cmwlth. 328, 625 A.2d 138 (1993) is not entirely clear. He appears to believe that the March 27, 2002 letter from the City Clerk informing him of the decision of the Site Designation Committee was a reviewable adjudication under the Local Agency Law, or that he was entitled to an evidentiary hearing prior to the Site Designation Committee issuing its recommendation to City Council. However, Vendor does not discuss or apply

■ Finally, Vendor cites, only in the Statement of the Case section of his brief and not in the Argument, to Section 719.05(B)(d) of the Vending Ordinance as, apparently, granting him a right to an evidentiary hearing on the nomination of his customary site as a permitted vending location; however, like the rest of his brief, he provides no discussion, application, or analysis of Section 719.05(B)(d) to the facts of this case. Vendor, however, does quote the provision from Section 719.05(B)(d) that "[v]endors who have been operating at a particular location prior to the adoption of the [Vending Ordinance] shall be provided an opportunity for *first preference* to continue their operation *provided* ... City Council designates the location as a permitted site." (Emphasis added.) Nevertheless, that right to a "first preference," as the language of Section 719.05(B)(d) explicitly provides, is predicated on City Council designating the requested site as a permitted location, which did not happen here. Before Vendor could claim any interest in his customary site and seek the "preference" rights referenced in Section 719.05(B)(d) of the Vending Ordinance, City Council had to include his customary site as a permitted location for vending. Because Vendor's customary site was never included as a permitted location, he could have no colorable claim to the "preference" rights referenced in Section 719.05(B)(d) of the Vending Ordinance and, therefore, the provisions of the Vend-

ing Ordinance created no protected right in his customary site.

Because the license under which Vendor operated did not entitle him to any particular location and still, in fact, allows him to operate elsewhere in the City, Vendor has no property interest in his customary site. Accordingly, Vendor has not alleged the deprivation of a property interest that would trigger the protections afforded by due process, *Fetfatzes* and *Lindsay*, or warrant an evidentiary hearing under the Local Agency Law, *Olson*. Thus, the law states with certainty that no recovery is possible and we, therefore, affirm the trial court's grant of the City's preliminary objections. *Hawks by Hawks*.

### ORDER

**NOW,** July 19, 2006, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby AFFIRMED.

■

the *Bruno* or the *City Council* opinions. We assume that he views the recommendations of the Site Designation Committee, and the denial of his "nomination" in their letter, as analogous to a decision of the Philadelphia Zoning Board of Adjustment, as in *Bruno*, and that he views the decision of City Council, not to include his customary site, as being analogous to the City Council's decision to approve or disapprove a conditional use application

on the advice of a planning commission, as in *City Council*. Nevertheless, because of our conclusion that Vendor had no property right which would afford him a right to an evidentiary hearing under the Local Agency Law, we do not address whether City Council or the Site Designation Committee are, in fact, a "Local Agency," or whether their decisions here were "adjudications" reviewable pursuant to the Local Agency Law.