J-S30023-25

2025 PA Super 216

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
NAADIR HANIF ABDUL-ALI :
:
Appellant : No. 918 EDA 2024

Appeal from the PCRA Order Entered July 21, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0008102-2015

BEFORE: OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY MURRAY, J.: **FILED SEPTEMBER 25, 2025**

Naadir Hanif Abdul-Ali (Appellant) appeals from the order dismissing his

first petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A.

§§ 9541-9546. After careful review, we affirm.

The trial court previously summarized the facts underlying Appellant's

convictions:

> On Wednesday, September 23, 2015, after enduring weeks of
> physical and emotional abuse from Appellant, eighteen[-]year[-]
> old Egyniah Muhammad [(Egyniah)], ended their [romantic]
> relationship and returned to live in her parents' home in Lower
> Moreland Township, Montgomery County. After spending the next
> four (4) days trying unsuccessfully to convince Egyniah to come
> back to him, Appellant told her, "If we can't be together,
> somebody got to go." Egyniah's older sister corroborated that
> conversation.

---

[*] Retired Senior Judge assigned to the Superior Court.

At approximately 7:00 p.m. on Sunday, September 27, 2015, Appellant removed his grandmother's black Toyota Camry sedan from its parking spot in a Philadelphia garage on Upsal Street and drove two (2) of his co-conspirators [] to Egyniah's home. The three men drove back to Philadelphia, where they picked up a fourth man, and returned to Egyniah's home.

At approximately 11:00 p.m., [Egyniah's parents,] Kevin Brown [(Mr. Brown)] and his wife, Cassandra Brock [(Ms. Brock)], were preparing to go to sleep in the second floor bedroom of their home. Their son, Symir Brown, had just left the house through the back door to walk to the local Wawa [convenience store,] where he worked the night shift. Also in the house with them were their daughters, Ruquaiyyah and Egyniah, along with Egyniah's baby son.

As Egyniah entered the downstairs kitchen to throw out an ice cream container, she saw a masked man outside the back door. She thought she recognized the masked man as Appellant's close friend, co-defendant Desmond Smith (Smith). Egyniah quickly locked the inside door and ran up to the second floor to alert her family to an intruder before hiding in her bedroom closet with her baby son. [Mr. Brown] confronted the intruders at his bedroom door. [Mr.] Brown yelled at his wife to climb out through the window … onto the roof, which she did. One of the intruders fired several shots from a .22 caliber handgun through the bedroom door, with one bullet striking Mr. Brown in the throat, fatally wounding him. [Ms.] Brock heard a noise as she watched her husband stumble out of the second story window and fall into the bushes below.

Appellant and his [co-conspirators] fled the house from the back door, jumped into the black Toyota sedan and drove away with the lights off. After driving less than one (1) block, Appellant stopped the car and told his co-conspirators[,] "Got to go back there. The job's not finished." The other three (3) men told Appellant to drive away. Appellant returned his grandmother's car to its parking spot in the Philadelphia garage before [the four men went] their separate ways.

Paul Hoyer, M.D., performed the autopsy on [Mr.] Brown on September 28, 2015, and determined [his] manner of death to be homicide. Based on the evidence gathered from witnesses and surveillance video, detectives focused their investigation on Appellant, [] Smith, Abdurrahman Amin [(Amin),] and Majahid

Mathews [(Mathews)]. Detectives obtained a warrant for Appellant's arrest along with his co-defendants on October 1, 2015. Detectives arrested … Smith early in the morning at his residence in Philadelphia on October 2, 2015. On the same day, Detective Gregory Henry [(Detective Henry)] took [] Smith's statement[,] in which [Smith] implicated Appellant…. [Mathews] also gave a statement to police implicating Appellant.

Appellant turned himself in to the Lower Moreland Township Police Department at approximately 10:00 p.m. on October 7, 2015. Detective Henry read and explained Appellant's [**Miranda**[1] rights] and obtained [Appellant's] waiver at 11:07 p.m. Appellant proceeded to give a statement to the detectives implicating himself in the homicide.

Trial Court Opinion, 7/11/18, at 2-6 (record citations and footnote omitted; footnote and some paragraph breaks added; punctuation modified).

Appellant first told the detectives he had been at home throughout the evening of the murder, watching football and ordering pizza. N.T., 7/12/16, at 143. He later changed his story, claiming he had initially been untruthful because he "wanted to find out what [the detectives] knew first[,] … before I was truthful." *Id.* at 154. Appellant then told the detectives that he and Egyniah

had developed a plan which entailed three other men going with him to Egyniah's house to take her from her [parents'] home … and return her to be with Appellant[,] as was her wish. Appellant claimed that Egyniah helped him formulate the plan about three days after she had left him, because she wanted to be with him but knew her parents did not approve of the relationship. Appellant admitted that he had driven the other men out to Egyniah's home earlier in the evening [of the murder] in his grandmother's black Toyota Camry[,] to show them where [the home] was[,] and then they … drove the car back to Egyniah's

_____

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

- 3 -

> home [later that night]. According to Appellant, none of the men
> had a gun or masks.

PCRA Court Opinion, 11/20/24, at 3-4 (record citations omitted). Appellant identified the three other men as "Damion Hardwood," "Eida D.," and "Brandon." N.T., 7/12/16, at 151. Appellant told detectives Egyniah kept a .22 handgun in her bedroom, and claimed the other men told him Egyniah had been the shooter at the time of the murder. *Id.* at 152, 153. Appellant claimed, "Egyniah wanted to kill both her parents, leave her son because he was in the way, and [] move away with me." *Id.* at 152.

The Commonwealth subsequently charged Appellant with one count each of second-degree murder, burglary, aggravated assault, simple assault, and criminal trespass, as well as five counts of criminal conspiracy.[2] The Commonwealth also charged Appellant with one count of firearms not to be carried without a license and two counts of possession of an instrument of crime (the firearms offenses).[3] The Commonwealth charged Smith, Amin, and Mathews with similar offenses, and joined all four co-defendants' cases for trial before a jury.

_____

[2] 18 Pa.C.S.A. §§ 2502(b), 3502(a)(1)(i), 2702(a)(1), 2701(a)(3), 3503(a)(1)(ii), 903(a)(1). The five conspiracy charges alleged Appellant conspired with Smith, Amin, and/or Mathews to commit murder, burglary, aggravated assault, simple assault, and criminal trespass.

[3] 18 Pa.C.S.A. §§ 6106(a)(1), 907(a).

Appellant was represented by Benjamin B. Cooper, Esquire (Attorney Cooper or trial counsel). On the eve of trial, Mathews pled guilty to third-degree murder and agreed to testify against his co-defendants. In the midst of trial, Amin pled guilty to third-degree murder. Smith presented an alibi defense, and the jury acquitted him of all charges. The jury acquitted Appellant of the firearms offenses and convicted him of the remaining charges.

On November 15, 2016, the trial court sentenced Appellant to life imprisonment for second-degree murder, and imposed a consecutive sentence of 10 to 20 years' imprisonment for conspiracy to commit murder. The trial court imposed no further penalty on the remaining convictions. Appellant filed a post-sentence motion, which the trial court denied. Thereafter, the trial court granted Attorney Cooper leave to withdraw from representation, and appointed the Public Defender's Office to represent Appellant. The Public Defender's Office filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement on Appellant's behalf.

Privately-retained counsel, Laura Wimmer, Esquire, represented Appellant before this Court.[4]

We affirmed Appellant's judgment of sentence. *Commonwealth v. Abdul-Ali*, 221 A.3d 1241, 1256 EDA 2017 (Pa. Super. 2019) (unpublished memorandum). On April 28, 2020, the Pennsylvania Supreme Court denied

---

[4] We refer to the Public Defender's Office and Attorney Wimmer collectively as appellate counsel.

- 5 -

Appellant's petition for allowance of appeal. *Commonwealth v. Abdul-Ali*, 230 A.3d 1012 (Pa. 2020).

On June 6, 2021, represented by new privately-retained counsel (PCRA counsel), Appellant timely filed the instant PCRA petition. The petition asserted numerous claims of Attorney Cooper's ineffective assistance during trial.[5] In a memorandum opinion dated May 4, 2022, the PCRA court[6] provided Pa.R.Crim.P. 907 notice of its intent to dismiss all but one of Appellant's claims without a hearing. On the same date, the PCRA court scheduled a limited evidentiary hearing on Appellant's claim that Attorney Cooper rendered ineffective assistance by arguing to the jury that—consistent with Appellant's statement to detectives—Appellant and Egyniah had planned for him to take her from her parents' home.

On July 26, 2022, the PCRA court conducted the limited evidentiary hearing, at which Appellant and Attorney Cooper testified. In a supplemental memorandum opinion dated January 24, 2023, the PCRA court indicated its intent to dismiss Appellant's remaining claim. Following additional briefing

---

[5] As set forth below in connection with Appellant's fourth issue, Appellant also alleged appellate counsel rendered ineffective assistance in failing to raise a certain issue on direct appeal.

[6] The Honorable Thomas P. Rogers presided over Appellant's trial and the instant PCRA proceedings.

and oral argument, on July 21, 2023, the PCRA court entered a final order dismissing Appellant's petition in its entirety.

Appellant appealed.[7] Appellant raises five issues for our review:

1. Was trial counsel ineffective in failing to object and move for a mistrial when [Smith's counsel] un-redacted [Smith]'s statement during cross-examination, thereby revealing Appellant was "the other guy" referenced in [Smith's] confession[,] in violation of **Bruton v. United States**, 391 U.S. 123 (1968)?

2. Should trial counsel have presented character witnesses[,] given that Appellant had no prior criminal convictions [and had] witnesses available to testify to his excellent reputation in the community for being peaceful and law-abiding?

3. Should trial counsel have objected when the trial court instructed the jury that 1) Appellant had an accomplice, thereby essentially instructing the jury that Appellant was guilty as charged[;] 2) a trial is about finding the truth rather than whether the Commonwealth met its burden of proving guilt beyond a reasonable doubt[;] and 3) the jury should consider whether Appellant was innocent[,] rather than whether the Commonwealth had met its burden?

4. Should prior counsel have challenged the prosecutor's improper closing argument?

_____

[7] On August 11, 2023, PCRA counsel mailed a notice of appeal to the Montgomery County Clerk of Courts, and emailed a copy to the PCRA court. The same day, the PCRA court ordered Appellant to file a Rule 1925(b) concise statement within 21 days. Appellant timely filed a concise statement. On March 12, 2024, Appellant filed a motion for leave to file a notice of appeal *nunc pro tunc*. In the motion, PCRA counsel averred that the August 11, 2023, notice of appeal had not been docketed, even though tracking information showed it had been successfully delivered to the Clerk of Courts. The Commonwealth did not oppose Appellant's motion, and on March 18, 2024, the PCRA court reinstated Appellant's appellate rights. On March 25, 2024, Appellant filed a notice of appeal *nunc pro tunc*. The PCRA court again ordered Appellant to file a Rule 1925(b) statement, and Appellant timely complied. The PCRA court filed an opinion under Rule 1925(a).

5. Did trial counsel concede Appellant committed second-degree murder by arguing to the jury that [Mr. Brown] was killed during a staged home invasion and kidnapping?

Appellant's Brief at 4-5.

Our review of an order dismissing a PCRA petition

is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. … The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Sandusky*, 324 A.3d 551, 564 (Pa. Super. 2024) (citation omitted).

Each of Appellant's claims challenges Attorney Cooper's effectiveness.

A PCRA petitioner claiming ineffective assistance of counsel

will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (quoting 42 Pa.C.S.A. § 9543(a)(2)(ii)). To establish a claim of ineffectiveness, a PCRA petitioner must plead and prove:

(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011) (employing the

- 8 -

ineffective assistance of counsel test from **Commonwealth v. Pierce**, 527 A.2d 973, 975-76 (Pa. 1987)). … Finally, because a PCRA petitioner must establish all the **Pierce** prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis.

**Commonwealth v. Treiber**, 121 A.3d 435, 445 (Pa. 2015) (citations modified).

In his first issue, Appellant argues Attorney Cooper rendered ineffective assistance by failing to object to Smith's counsel's cross-examination of Detective Henry, regarding Smith's statement to detectives. Appellant's Brief at 15-29. While Smith's statement had been redacted to replace Appellant's name with "the other guy," Appellant maintains Smith's counsel effectively "un-redacted" the statement by identifying Appellant as "the other guy." **Id.** at 17-18. Appellant highlights an exchange during cross-examination where Smith's counsel quoted a portion of Smith's statement, in which detectives asked Smith to describe what "the other guy" was wearing on the night of the murder. **Id.** at 17 (quoting N.T., 7/12/16, at 209-10). Smith responded, "A gray hoodie." **Id.** Smith's counsel then asked Detective Henry, "Did you have a photograph of [Appellant] in a gray hoodie when you asked [Smith] that question?" **Id.** Detective Henry answered, "We did." **Id.** Appellant asserts this questioning confirmed Appellant was "the other guy," and thereby constituted a **Bruton** violation, such that Attorney Cooper should have objected and requested a mistrial. Appellant's Brief at 17, 26-29.

- 9 -

The Commonwealth counters that no **Bruton** violation occurred because Smith's statement was properly redacted, and the trial court instructed the jury that it could consider the statement as evidence against Smith alone. Commonwealth Brief at 21-22. Any identification of Appellant as "the other guy," the Commonwealth maintains, resulted not from Smith's statement itself but from other properly-admitted evidence, including Appellant's own statement to detectives. **Id.** at 22-23. The Commonwealth argues "there is no **Bruton** violation if the identification of a defendant 'was inculpatory [only] by reference to evidence other than the redacted confession.'" **Id.** at 22 (quoting **Commonwealth v. Cannon**, 22 A.3d 210, 219 (Pa. 2011)).

"Under the Confrontation Clause of the Sixth Amendment, a criminal defendant has a right to confront witnesses against him." **Commonwealth v. Nealy**, 333 A.3d 393, 400 (Pa. Super. 2025) (quoting **Commonwealth v. Rivera**, 773 A.2d 131, 137 (Pa. 2001)). As our Supreme Court has explained:

> In **Bruton**, the United States Supreme Court held that the admission into evidence of an extrajudicial statement of confession by non-testifying co-defendant A inculpating co-defendant B in the crime, violated co-defendant B's right of cross-examination under the Confrontation Clause.... In other words, as the High Court stated subsequently in **Richardson v. Marsh**, 481 U.S. 200, 206 (1987), "where two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand." In reaching this holding, the High Court reasoned that, even if the jurors were instructed to the contrary, there remained a substantial risk that they would look to co-defendant A's incriminating extrajudicial statement in assessing co-defendant B's guilt. **Bruton**, 391 U.S. at 126, 128-29; **see also id.** at 135 ("[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital

- 10 -

to the defendant, that the practical and human limitations of the jury system cannot be ignored."); *id.* at 137 ("[I]n the context of a joint trial we cannot accept limiting instructions as an adequate substitute for [a co-defendant's] constitutional right of cross-examination."). Thus, in *Bruton*, the High Court created a narrow exception to the general legal principle that the jury is presumed to follow the court's instructions. *Id.* at 135-37; *Richardson*, 481 U.S. at 206-07.

In *Richardson*, the High Court considered whether *Bruton*'s holding applies when co-defendant A's confession was redacted to omit any reference to co-defendant B, but co-defendant B was "nonetheless linked to the confession by evidence properly admitted against him at trial." *Id.* at 202. In answering this question in the negative, the *Richardson* Court distinguished between a confession that was incriminating on its face to co-defendant B (which was clearly subject to *Bruton*'s rule) and a confession that was incriminating to co-defendant B only by inference from evidence subsequently introduced at trial. The *Richardson* Court held that the latter was not subject to *Bruton*'s rule. *Id.* at 208. Thus, the High Court in *Richardson* limited *Bruton*'s holding to statements of confession by co-defendant A that were facially incriminating to co-defendant B, exempting from *Bruton*'s control those statements that were incriminating to co-defendant B only after connection with or linkage to other evidence admitted at trial. *Id.* at 208-09; *see also Gray v. Maryland*, 523 U.S. 185, 191, 195 (1998); *see also Cannon*, 22 A.3d at 219 (applying *Richardson*); *Commonwealth v. Brown*, 925 A.2d 147, 157 (Pa. 2007) (noting this Court's approval of the redaction practices permitted under *Richardson*).

*Commonwealth v. Roney*, 79 A.3d 595, 623-24 (Pa. 2013) (citations modified); *see also Commonwealth v. Daniels*, 104 A.3d 267, 294 (Pa. 2014) ("The general rule in a joint trial of co-defendants is that the law presumes that the jury can follow an appropriate instruction, which explains that evidence introduced with respect to only one defendant cannot be considered against other defendants. *Bruton* departed from this salutary

general rule only by concluding that where there are 'powerfully incriminating statements' admitted against a non-testifying co-defendant who stands side by side with the accused, such statements can be devastating as well as inherently suspect when they shift the blame to the accused." (citation omitted)).

> In [**Commonwealth v.**] **Travers**, [768 A.2d 845, 848 (Pa. 2001),] our Supreme Court held that the redaction of a non-testifying co-defendant's confession in a joint trial, which replaced any direct reference to the non-confessing co-defendant with a neutral pronoun, when accompanied by an appropriate cautionary charge, sufficiently protected the non-confessing defendant's Sixth Amendment rights. **Id.** at 851. The **Travers** Court observed Pennsylvania law is now clear that redacted statements trigger confrontation clause concerns under **Bruton only if** the redacted statement **on its face** ties the defendant to the crime, but not if the incrimination arises from linkage to other evidence in the case. **Id.** at 850 n.2 (citing **Gray**, 523 U.S. 185). When the redacted statement is not powerfully incriminating on its face, however, the general rule that jurors can and will follow the court's cautionary jury instructions controls. **Id.**; [**see also id.** at 846-47 (holding that "redaction of a non-testifying co-defendant's confession in a joint trial, which replaced any direct reference to the defendant with the words 'the other man,' when accompanied by an appropriate cautionary charge, was sufficient to protect the defendant's" confrontation rights under **Bruton**).] …
>
> Moreover, even where a redacted confession violates **Bruton**, its admission might be harmless error if other properly admitted evidence overwhelmingly establishes the defendant's guilt. **Commonwealth v. McGlone**, 716 A.2d 1280, 1284 (Pa. Super. 1998). Further, "the United States Supreme Court has not extended the reach of its *per se* **Bruton** rule to comments by counsel, which are by definition nonevidentiary." **Roney**, 79 A.3d at 629.

**Nealy**, 333 A.3d at 400-01 (bold emphasis in original; citations modified; footnotes omitted).

Instantly, our review discloses that Detective Henry testified at trial regarding his October 2, 2015, interview with Smith, *see* N.T., 7/12/16, at 57-85, and read Smith's full written statement to the jury. *Id.* at 86-110; *see also* Commonwealth's Exhibit C-94. Smith initially told detectives he spent the night of the murder with his girlfriend, and denied leaving his neighborhood that night. N.T., 7/12/16, at 90-91. Smith later changed his story, admitting he went to Egyniah's house that night. *Id.* at 103. Smith stated he met up with "the other guy," who was driving a black car, around 11:00 p.m. *Id.* at 102-04. Smith told detectives that he and "the other guy" had been friends since childhood. *Id.* at 92. According to Smith, "the other guy" simply saw Smith on the street in Smith's neighborhood that night, and there had been no communication between the two prior to their meeting. *Id.* at 103-04. Smith stated he got in the car, and there were two additional men in the car whom he did not recognize. *Id.* at 103-04. Smith described "the other guy" as wearing "[a] gray hoodie." *Id.* at 104. Smith stated "the other guy" said they would "just … take a ride," and that there was no conversation about where they were going or what they would do. *Id.* at 104-05.

Smith stated the car arrived at Egyniah's house after a twenty-minute drive, and all four men exited the car. *Id.* at 104-05. Smith indicated "the other guy" "wanted to go in the back" of the house, but that there was no discussion about what they were doing there. *Id.* at 105. Smith stated, "Somebody tried the [back] door, but it was locked." *Id.* According to Smith,

Smith then returned to the car alone. *Id.* at 106. Smith told detectives he was not sure whether the other men eventually entered the house. *Id.* Smith stated he heard gunshots, and the other men soon returned to the car. *Id.* Smith asked the other men, "'What was that?' Somebody said, 'We out, we out.'" *Id.* Smith did not describe any further conversation among the men regarding what happened at the house. He denied seeing anyone with a gun or mask. *Id.* The men drove away, and soon dropped Smith off near his residence. *Id.* 106-07.

Before analyzing the instant claim, we emphasize that Appellant raised a *Bruton* challenge to the admission of Smith's redacted statement on direct appeal, which this Court rejected. *See Abdul-Ali*, 221 A.3d 1241 (unpublished memorandum at 8) ("Smith's redacted statement … did not give rise to a *Bruton* violation because it did not explicitly reference or incriminate [A]ppellant in any way, and [any] prejudicial effect of this statement was ameliorated by the trial court's cautionary instruction to the jury that this statement could only be considered as evidence against Smith and no one else."). The instant ineffectiveness claim is limited to Attorney Cooper's failure to object to Smith's counsel's cross-examination of Detective Henry, which Appellant characterizes as "un-redact[ing]" Smith's statement by identifying Appellant as "the other guy" referenced therein. Appellant's Brief at 15.

The PCRA court rejected this claim, analyzing as follows:

Appellant mischaracterizes much of the testimony about which he complains. Nowhere in the cited testimony does Smith's counsel

specifically confirm that the "other guy" Smith was referencing was Appellant. At best, Detective Henry's confirmation that Smith was shown a photograph of Appellant in a gray hoodie while talking about the other guy wearing a gray hoodie conceivably links Appellant as the other guy. However, Appellant himself admitted to driving his grandmother's car out to Egyniah's house twice that evening[; Appellant] admitted that he was the person in the photo wearing a gray hoodie in the garage where his grandmother's car was parked on that night[;] witness Sean Creedon[, a neighbor,] testified th[at] he watched as four men ran from the back of Egyniah's house after hearing gunshots[,] and [he] described the driver as a stockier built guy wearing a gray sweatshirt[8][;] and finally[,] … Mathews testified that Appellant drove the other three men out to and back from Egyniah's house that night.

Because **Bruton** does not extend to statements that may be incriminatory to a co-defendant … [merely] by contextual implication or inference, especially where the court gave limiting instructions, Attorney Cooper was not ineffective for failing to request a mistrial. Appellant's claim lacks arguable merit. Additionally, Appellant has failed to state or demonstrate that absent this testimony, he would have likely been acquitted. Accordingly, no relief is due.

PCRA Court Opinion, 11/20/24, at 29 (original footnote omitted; footnote added).

We agree with the PCRA court's analysis, and its conclusion that Appellant's underlying **Bruton** claim lacks arguable merit. Our review of the record confirms that Smith's statement was not "un-redacted." **See** N.T., 7/12/16, at 208-10. Any inference that Appellant was "the other guy" arose not from the statement itself, but "from linkage to other evidence in the case," which does not result in a **Bruton** violation. **Nealy**, 333 A.3d at 400-01.

_____

[8] Appellant told the detectives he weighed 240 pounds. N.T., 7/12/16, at 147.

Our review further discloses that, even if Appellant was identified as "the other guy," Smith's statement is neither "facially" nor "powerfully" incriminating. *Roney*, 79 A.3d at 624; *Daniels*, 104 A.3d at 294. Smith did not describe "the other guy" as planning or perpetrating any crime. The mere presence of "the other guy" among the men who went to Egyniah's house on the night of the murder is not incriminating without linkage to other evidence. Because the "statement is not powerfully incriminating on its face, … the general rule that jurors can and will follow the court's cautionary jury instructions controls." *Nealy*, 333 A.3d at 401

Finally, and most importantly, any identification of Appellant as "the other guy" was consistent with Appellant's own trial strategy. In his statement to detectives, Appellant admitted he was the man wearing the gray hoodie in the photograph referenced during Smith's counsel's cross-examination of Detective Henry. *See* N.T., 7/12/16, at 123-24, 150. Appellant further admitted he and three other men went to Egyniah's house on the night of the murder. *See id.* at 150-55. As to Appellant's involvement in that night's events, Smith's statement is consistent with Appellant's own account, which maintained he and Egyniah had planned to stage her kidnapping to get her away from her parents. *Id.* at 153. Attorney Cooper argued to the jury that this plan "went bad," but that Appellant had neither intended nor perpetrated any of the violence that ensued. N.T., 7/6/16, at 105 (Attorney Cooper's opening statement). As set forth more fully below in connection with

Appellant's fifth issue, this trial strategy was reasonable, albeit ultimately unsuccessful. In light of this strategy—which conceded that Appellant was the man in the gray hoodie—Smith's counsel's cross-examination of Detective Henry regarding the man in the gray hoodie was not objectionable. Accordingly, Appellant's first issue merits no relief.

In his second issue, Appellant argues Attorney Cooper rendered ineffective assistance by failing to call character witnesses. *See* Appellant's Brief at 29-32. Appellant—who had no prior criminal record—maintains that had Attorney Cooper called witnesses to testify to his reputation for "peacefulness, non-violence, and being law abiding," he would likely have been acquitted. *Id.* at 29. Appellant asserts "the evidence was not so overwhelming that character witnesses could not have made a difference." *Id.* at 30. Appellant notes Smith called character witnesses, and argues that "[t]he jury obviously did not believe all the Commonwealth's evidence given that it acquitted Smith…." *Id.* Appellant argues he "had numerous character witnesses who were eager to testify," and that "the availability of character witnesses is apparent from the affidavits" attached to his PCRA petition. *Id.* at 29, 31.

The Commonwealth counters Appellant failed to plead that Attorney Cooper was aware or should have been aware of his proposed character witnesses. Commonwealth Brief at 13. The Commonwealth also argues that Appellant makes only a "boilerplate" argument that the lack of character

witnesses prejudiced him, and that character evidence had limited utility because Appellant implicated himself in the events resulting in the murder. *Id.* at 17-18.

> As a general rule, evidence of a person's character may not be admitted to show that individual acted in conformity with that character on a particular occasion. Pa.R.E. 404(a). However, Pennsylvania Rule of Evidence 404(a)(1) provides an exception which allows a criminal defendant to offer evidence of his or her character traits which are pertinent to the crimes charged and allows the Commonwealth to rebut the same. Pa.R.E. 404(a)(1).

*Commonwealth v. Johnson*, 27 A.3d 244, 247-48 (Pa. Super. 2011). As this Court has explained:

> It has long been the law in Pennsylvania that an individual on trial for an offense against the criminal law is permitted to introduce evidence of his good reputation in any respect which has "proper relation to the subject matter" of the charge at issue. Such evidence has been allowed on a theory that general reputation reflects the character of the individual and a defendant in a criminal case is permitted to prove his good character in order to negate his participation in the offense charged. The rationale for the admission of character testimony is that an accused may not be able to produce any other evidence to exculpate himself from the charge he faces except his own oath and evidence of good character.

> It is clearly established that evidence of good character is to be regarded as evidence of substantive fact just as any other evidence tending to establish innocence and may be considered by the jury in connection with all of the evidence presented in the case on the general issue of guilt or innocence. Evidence of good character is substantive and positive evidence, not a mere make weight to be considered in a doubtful case, and … is an independent factor which may of itself engender reasonable doubt or produce a conclusion of innocence. Evidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation for the particular trait or traits of character involved in the commission of the crime charged. The cross-examination of such witnesses by the Commonwealth must

- 18 -

be limited to the same traits. Such evidence must relate to a period at or about the time the offense was committed, and must be established by testimony of witnesses as to the community opinion of the individual in question, not through specific acts or mere rumor.

*Id.* at 248 (emphasis omitted) (quoting ***Commonwealth v. Luther***, 463 A.2d

1073, 1077-78 (Pa. Super. 1983)).

Our Supreme Court has determined that "[t]he failure to call character witnesses does not constitute *per se* ineffectiveness." … ***Treiber***, … 121 A.3d 435, 463 … (citation omitted). It is axiomatic that when a PCRA petitioner claims counsel was ineffective for failing to call a witness, he or she must establish "(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial." ***Id.*** … at 464.

***Commonwealth v. Goodmond***, 190 A.3d 1197, 1202 (Pa. Super. 2018).

Additionally, section 9545(d)(1) of the PCRA provides:

(i) Where a petitioner requests an evidentiary hearing, the petition shall include a certification signed by each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony.

(ii) If a petitioner is unable to obtain the signature of a witness under subparagraph (i), the petitioner shall include a certification, signed by the petitioner or counsel, stating the witness's name, address, date of birth and substance of testimony. … The certification under this subparagraph shall include any documents material to the witness's testimony and specify the basis of the petitioner's information regarding the witness and the petitioner's efforts to obtain the witness's signature….

(iii) Failure to substantially comply with the requirements of this paragraph shall render the proposed witness's testimony inadmissible.

42 Pa.C.S.A. § 9545(d)(1).

Instantly, Appellant attached to his PCRA petition typewritten letters from four individuals, addressed to PCRA counsel. ***See*** PCRA Petition, 6/6/21, Exhibit A. In substantially identical language, the individuals indicate their knowledge of Appellant's reputation for being a peaceful, law-abiding person, and state they would have testified regarding Appellant's reputation at his trial, but no one asked them to testify. ***Id.*** The letters include the individuals' names and contact information, **but are not signed**. ***Id.*** Appellant's petition did not describe any efforts to obtain the witnesses' signatures. ***See generally***, PCRA Petition, 6/6/21. Appellant did not allege that he ever told Attorney Cooper about the witnesses, or that Attorney Cooper knew of their existence. Id., ¶¶ 26-35. Rather, Appellant alleged Attorney Cooper "had a duty to investigate whether [Appellant] had character witnesses who could have testified." ***Id.***, ¶ 34.

In rejecting Appellant's claim, the PCRA court set forth the following analysis:

> Appellant complains that Attorney Cooper failed to provide effective assistance of counsel by not introducing the testimony of character witnesses willing to attest to Appellant's good character as evidenced by the attached "affidavits." Appellant asserts "[h]ad the jury known that good reputation alone could provide the basis for reasonable doubt, the jury likely would have acquitted in this case." (PCRA Petition at ¶ 33). He also states "[i]t does not appear from the record that [Attorney Cooper] made any effort to introduce character evidence." (***Id.*** at ¶ 34). Finally, Appellant proffers that he "suffered prejudice from the failure to introduce character evidence." (***Id.*** at ¶ 35). None of the typewritten letters attached to the petition, many in the same font

with identical language, are signed. *See* 42 Pa.C.S.A. § 9545(d) ("Where a petitioner requests an evidentiary hearing, the petition shall include a certification signed by each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony"). Appellant has not met his burden.

In this case, assuming that the testimony of any of these particular character witnesses would have been admissible, Appellant has failed to allege, must less demonstrate, that Attorney Cooper was aware of, or should have been aware of, these witnesses at the time of trial[,] as required by the third prong of the test [set forth in ***Treiber***, ***supra***]. Appellant's assertion that the evidence in this case was primarily circumstantial is inaccurate. Further, Appellant's boilerplate allegation of prejudice cannot satisfy the [fifth] prong. As Appellant has failed to satisfy two of the [] prongs of the applicable test, no relief is due.

Moreover, the record demonstrates that Attorney Cooper presented the testimony of a credible witness[9] who testified very favorably on Appellant's behalf and provided her first[]hand observances of the relationship between Appellant and Egyniah during the relevant time period. Her testimony also reveals that Attorney Cooper was made aware of this witness and that he had contacted her shortly after Appellant's arrest. Even assuming Appellant had informed Attorney Cooper of these new "character" witnesses, Appellant has failed to state how he would demonstrate the absence of a reasonable basis for not calling the additional witnesses[,] when [Attorney Cooper] presented one witness on

_____

[9] During trial, Appellant presented testimony from Michelle Arthur (Ms. Arthur), who testified she "has known Appellant since he was born" and, "[a]lthough not related by blood," considered herself "Appellant's aunt." PCRA Court Opinion, 11/20/24, at 9. Ms. Arthur

explained that she has had a good relationship with Appellant and cares about him very much. Ms. Arthur testified that Appellant and Egyniah came to stay with her in [her] home for two weeks in the fall of 2015…. She described the couple as "lovey-dovey," and never heard an argument, a raised voice, or a door slam.

*Id.* at 9-10 (record citations omitted).

Appellant's behalf who testified credibly and with personal knowledge. Hence, the claim must fail.

PCRA Court Opinion, 11/20/24, at 25-27 (footnote added). We agree with the PCRA court's analysis.

As Appellant failed to obtain signatures from his proposed witnesses or specify any efforts to obtain signatures, his petition did not comply with PCRA section § 9545(d)(1), rendering the witnesses' testimony inadmissible at an evidentiary hearing. 42 Pa.C.S.A. § 9545(d)(1)(i)-(iii). Appellant also failed to allege facts demonstrating that Attorney Cooper knew or should have known of the witnesses' existence the time of trial. *See Goodmond*, 190 A.3d at 1202. Finally, Appellant failed to demonstrate that the absence of character evidence was so prejudicial as to deny him a fair trial. *See id.* In arguing that "the jury would likely have acquitted" Appellant based on his "good reputation alone," Appellant woefully understates the strength of the evidence against him and fails to acknowledge his own admitted involvement in the events leading to the murder.[10] Appellant's Brief at 30. For these reasons, Appellant's second issue merits no relief.

In his third issue, Appellant argues Attorney Cooper rendered ineffective assistance by failing to object to three of the trial court's jury instructions. *Id.*

---

[10] In attempting to portray the case as a close call, Appellant mistakenly relies on the jury's acquittal of Smith and its apparent disbelief of some of the evidence against Smith, which have no bearing on the case against Appellant. *See* Appellant's Brief at 30.

at 32-44. Appellant asserts Attorney Cooper "should have objected to the [trial] court's accomplice instruction, the court's direction that a trial is a search for truth, and the court's instruction that the jury should consider whether [Appellant] was innocent." *Id.* at 32-33. Appellant argues the trial court instructed the jury that Appellant and Mathews "were in fact accomplices, thereby suggesting that the jury was required to conclude that Appellant participated in the crime." *Id.* at 33. Appellant also maintains the trial court's statements that a trial is a "search for the truth" and "the innocent should speedily go free" misstated and thereby lowered the Commonwealth's burden of proof. *Id.* at 43.

The Commonwealth counters that the jury instructions accurately stated the law, and that Attorney Cooper cannot be deemed ineffective for failing to lodge meritless objections. Commonwealth Brief at 25. The Commonwealth argues that the accomplice instruction, taken as a whole, "makes clear that it was up to the jury to determine whether Mathews was an accomplice." *Id.* at 27. The Commonwealth further argues that the trial court properly instructed the jury regarding the Commonwealth's burden of proof, and that Appellant mischaracterizes the "search for truth" and "the innocent should speedily go free" instructions, which were not objectionable. *Id.* at 31-37.

"In reviewing a jury charge, we determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case." *Commonwealth v. Jones*, 323 A.3d 13, 21 (Pa.

Super. 2024) (citation omitted); *see also Commonwealth v. Davis*, 326

A.3d 988, 994 (Pa. Super. 2024) ("Only where there is an abuse of discretion

or an inaccurate statement of the law is there reversible error.").

> A trial court has broad discretion in formulating and delivering instructions to a jury. When reviewing the exercise of that discretion, **an appellate court must evaluate the trial court's instruction as a whole to determine if it was fair or prejudicial**. A trial court may use such language as it chooses, so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. We will not rigidly inspect a jury charge, finding reversible error for every technical inaccuracy, but rather evaluate whether the charge sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision. **Error cannot be predicated on isolated excerpts of the charge, but it is the general effect of the charge that controls**.

*Commonwealth v. Drummond*, 285 A.3d 625, 634-35 (Pa. 2022)

(emphasis added; footnotes and quotation marks omitted).

Instantly, our review discloses the trial court instructed the jury as

follows regarding accomplice testimony:

> Before I begin the actual criminal law instructions for the various offenses, I want to define for you first the term of – what's known as "accomplice." A person is an accomplice of another person in the commission of a crime if he has the intent of promoting or facilitating the commission of the crime and then solicits the other person to commit it or aids or agrees or attempts to aid such other person in planning or committing the crime. Put simply, an accomplice is a person who knowingly and voluntarily cooperates with or aids another person in committing an offense.
>
> When a Commonwealth witness is an accomplice, his or her testimony has to be judged by special precautionary rules. Experience shows us that an accomplice, when caught, may often try to place the blame falsely on someone else. He may testify falsely in the hope of obtaining favorable treatment or for some corrupt and wicked motive.

On the other hand, an accomplice may be a perfectly truthful witness. The special rules that I will give you are meant to help you distinguish between truthful and false accomplice testimony. <u>In view of the evidence of Mr. Mathews' criminal involvement, you must regard him as an accomplice in the crime charged and apply the special rules to his testimony.</u> **You must decide whether Mr. Mathews was an accomplice in the crime charged. If, after considering all the evidence, you fi[n]d that he was an accomplice,** then you must apply the special rules to his testimony; otherwise, ignore those rules.[11]

**Use this test to determine whether Mr. Mathews was an accomplice.** Again, an accomplice is a person who knowingly and voluntarily cooperates with or aids another in the commission of a crime. These are the special rules that apply to accomplice testimony:

First, you should view the testimony of an accomplice with disfavor because it comes from a corrupt and polluted source. Second, you should examine the testimony of the accomplice closely and accept it with care and caution. Third, you should consider whether the testimony of an accomplice is supported in whole or in part by other evidence.

Now, accomplice testimony is more dependable if supported by independent evidence. However, even if there is no independent supporting evidence, you may still find the defendants guilty solely on the basis of an accomplice's testimony. If, after using the special rules I just told you about, you are satisfied beyond a reasonable doubt that the accomplice testified truthfully, then the defendants are guilty beyond a reasonable doubt.

N.T., 7/18/16, at 179-81 (emphases and footnote added).

The trial court also made the following general instructions to the jury:

_____

[11] This instruction is a verbatim statement of the Pennsylvania Suggested Standard Criminal Jury Instruction on accomplice testimony. **See** Pa. SSJI (Crim), § 4.01. However, as the Commonwealth correctly observes, in reading both the underlined and bolded portions of the preceding paragraph, the trial court "inadvertently read both sections of what is meant to be an 'or' option." Commonwealth Brief at 26.

Members of the jury, we are here for one sole and one steadfast purpose, and that, very simply, is to discover the truth. Having discovered it, you will apply the law of the land to the truth and administer justice accordingly.

*Id.* at 172.

You have sworn and it is your solemn duty to decide this case fairly upon the evidence and the evidence alone, making the necessary applications of law to the evidence as I shall give you the law. It is on this basis that justice will be achieved, the law will be vindicated, the safety of the people preserved, and the rights of an accused protected.

Members of the jury, the law only requires that those who are proven guilty according to set standards should be speedily punished, and those who are innocent should just as speedily go free.

*Id.* at 172-73.

The PCRA court rejected Appellant's ineffectiveness claim regarding the trial court's jury instructions, analyzing as follows:

[T]aken as a whole, [the trial] court's reading of the standard instruction clearly, adequately, and accurately states the law on accomplice [testimony]. The jury did not request clarification and, in fact, acquitted … Smith. Attorney Cooper may not be found to have rendered ineffective assistance for failing to object when the underlying claim is devoid of merit.

The remaining objections that Appellant asserts should have been made at trial relate to the [trial] court's general charge immediately following the closing arguments of counsel. The particular wording is from a preliminary instruction developed by Montgomery County jurists that provides a general description of the role of the jury in criminal cases. [*See* N.T., 7/18/16, at 170-73.] According to Appellant, the phrases Attorney Cooper should have objected to[,] relating to the search for the truth and those who are innocent should speedily go free, somehow reduce the Commonwealth's burden of proof. A reading of the charge as a whole clearly and properly sets out the Commonwealth's burden of proof, and the claim is frivolous.

- 26 -

PCRA Court Opinion, 11/20/24, at 34-35.

We agree with the PCRA court that, when viewed as a whole, the trial court's jury instructions accurately stated the law.

In the accomplice testimony instruction, the trial court initially misstated, "In view of the evidence of Mr. Mathews' criminal involvement, you must regard him as an accomplice in the crime charged and apply the special rules to his testimony." N.T., 7/18/16, at 180. However, in the next three consecutive sentences, the court clearly and correctly stated three times that it was up to the jury to decide whether Mathews was an accomplice. *Id.* ("You must decide whether Mr. Mathews was an accomplice in the crime charged. If, after considering all the evidence, you fi[n]d that he was an accomplice, then you must apply the special rules to his testimony; otherwise, ignore those rules. Use this test to determine whether Mr. Mathews was an accomplice."). Moreover, contrary to Appellant's argument, the initial misstatement did not state that Mathews was an accomplice **of Appellant**, nor did it in any way suggest Appellant's involvement in the murder. Rather, the instruction specifically warned that "an accomplice, when caught, may often try to place the blame falsely on someone else," and advised the jury to view any accomplice testimony with skepticism. *Id.* at 179, 180. Far from suggesting Appellant's involvement, the instruction instead suggested that the jury should consider whether Mathews was falsely placing blame on Appellant. We further emphasize that, following the accomplice testimony instruction

- 27 -

challenged by Appellant, the trial court issued an accomplice liability instruction which clearly and repeatedly stated that it was up to the jury to decide whether either defendant was the accomplice of anyone else. **See id.** at 202-03. Viewing the jury instructions as a whole, we determine their "general effect" accurately conveyed that it was up to the jury to decide whether Mathews was an accomplice. **Drummond**, 285 A.3d at 635.

Regarding the "search for truth" instruction, we agree with the Commonwealth that "[i]t is axiomatic that a trial is a search for the truth." Commonwealth Brief at 32 (quoting **Commonwealth v. Bango**, 742 A.2d 1070, 1089 (Pa. 1999)). We further agree with the Commonwealth that Appellant mischaracterizes the "innocent should go free" instruction as suggesting "the jury should acquit **only** if it believed the Appellant was innocent…." Appellant's Brief at 43 (emphasis added); **see also** Commonwealth Brief at 33. Our review discloses the trial court accurately instructed the jury regarding the Commonwealth's burden of proof. **See** N.T., 7/18/16, at 204-05. Viewing the jury instructions as a whole, we determine the two general instructions challenged by Appellant neither misstated the law nor lowered the Commonwealth's burden of proof. Accordingly, Appellant's third issue merits no relief.

In his fourth issue, Appellant argues Attorney Cooper rendered ineffective assistance by failing to object to five statements made during the prosecutor's closing argument, which Appellant characterizes as prosecutorial

misconduct. Appellant's Brief at 44-54. The Commonwealth counters that the prosecutor's statements were permissible comments on the evidence, or fair responses to defense counsel's closing arguments. Commonwealth Brief at 37-59. The Commonwealth also argues that, had any of the prosecutor's statements been inappropriate, any resulting prejudice was cured by the trial court's instruction to the jury that the arguments of counsel are not evidence. *Id.* at 57-58 (quoting N.T., 7/18/16, at 175, 235).

First, Appellant argues Attorney Cooper should have objected to the prosecutor's comment on the "tragic irony" of the murder occurring during the weekend of Pope Francis's visit to Philadelphia on September 26-27, 2015. Appellant's Brief at 45 (quoting N.T., 7/18/16, at 106). Appellant maintains the prosecutor improperly suggested that the pope would want the jury to convict. *Id.* at 51. The Commonwealth argues the prosecutor's statement was properly made within the context of commenting on the evidence of road closures related to the papal visit, which Appellant had argued "would interfere with [his] ability to participate in the murder." Commonwealth Brief at 42; *see also id.* at 41-42 (quoting N.T., 7/18/16, at 105-06 (prosecutor's argument that no pope-related road closures blocked Appellant's route to Egyniah's house)).

Second, Appellant challenges the prosecutor's comments regarding the statements Appellant, Smith, and Mathews gave to detectives. Appellant's Brief at 45. The prosecutor observed that each defendant initially

denied involvement in the murder, then admitted his involvement after the detectives confronted each with evidence contradicting his initial account. *Id.* at 45-46 (quoting N.T., 7/18/16, at 107-08). The prosecutor commented, "[That's] how detectives get at the truth. It's very rare when a suspect gives up a hundred percent of the truth in the first part of the statement…. It comes out in bits and pieces, drips and drabs." *Id.* Attorney Cooper objected to this comment, and the trial court overruled the objection. *Id.* Appellant asserts the prosecutor improperly "claim[ed] to have expertise in how confessions by guilty defendants typically work." *Id.* at 45. He maintains Attorney Cooper "should have objected more thoroughly and appellate counsel should have raised the issue on [direct] appeal…." *Id.*[12] The Commonwealth counters that the comment fairly summarized the evidence regarding the three men's statements to detectives. Commonwealth Brief at 43. The Commonwealth further argues Attorney Cooper cannot be deemed ineffective because he in fact objected to the comment, and appellate counsel cannot be deemed ineffective for failing to raise a meritless issue. *Id.* at 43, 45.

Third, Appellant argues Attorney Cooper rendered ineffective assistance by failing to object to the prosecutor's comments regarding Mathews's plea deal. Appellant's Brief at 46-47. Appellant contends the prosecutor

_____

[12] In his PCRA petition, Appellant alleged that "to the extent [Attorney Cooper] preserved any of these issues [(regarding the prosecutor's improper arguments)], appellate counsel should have appealed." PCRA Petition, 6/6/21, ¶ 82.

improperly gave his own opinion on the strength of the evidence by stating that the Commonwealth offered Mathews a plea deal because Appellant, not Mathews, was the shooter. *Id.* (quoting N.T., 7/18/16, 142-43). The Commonwealth disagrees, arguing that the prosecutor's statement fairly responded to Attorney Cooper's closing argument. Commonwealth Brief at 46-47. In that argument, Attorney Cooper maintained Mathews was the shooter and asserted Mathews gave false trial testimony at the Commonwealth's behest in exchange for his plea deal. *Id.* (quoting N.T., 7/18/16, at 23-27, 142-44).

Fourth, Appellant argues Attorney Cooper rendered ineffective assistance by failing to object to the prosecutor's comments regarding Sallie Jackson (Ms. Jackson), who was Smith's girlfriend and testified as Smith's alibi witness. Appellant's Brief at 47-48. Pertinently, the Commonwealth charged Ms. Jackson with giving false testimony before a grand jury in connection with the instant matter, and Smith introduced evidence that Ms. Jackson's defense attorney had described the Commonwealth's actions as "vindictive." N.T., 7/14/16, at 262. During cross-examination of Ms. Jackson, the prosecutor introduced evidence that the judge presiding over Ms. Jackson's case stated that the Commonwealth had been "eminently reasonable" in offering Ms. Jackson a plea deal that would allow for expungement of her criminal record. *Id.* at 313. In his closing argument, the prosecutor argued the jury should favor the judge's statement that the Commonwealth had been "eminently

reasonable," rather than Ms. Jackson's attorney's assertion that it had been "vindictive." N.T., 7/18/16, at 158-59. Appellant argues the prosecutor improperly offered his own opinion and the opinion of a judge presiding over a separate case. Appellant's Brief at 47.

The Commonwealth maintains the prosecutor properly referenced the statement of the judge in Ms. Jackson's case, as that statement had been admitted into evidence. Commonwealth Brief at 54-55. The Commonwealth also argues the prosecutor fairly responded to the closing argument of Smith's counsel, who referenced the "vindictive" comment and asserted the Commonwealth had "locked up" Ms. Jackson "because they did not like what she had to say." *Id.* at 51-54 (quoting N.T., 7/18/16, at 80-82). The Commonwealth further argues the prosecutor's comment regarding Smith's alibi witness had no bearing on the evidence against Appellant; therefore, Appellant cannot have suffered prejudice from the comment. *Id.* at 55.

Fifth, Appellant argues the prosecutor improperly "vouched for himself and the detectives and attempted to bolster their credibility." Appellant's Brief at 48. During his closing argument, the prosecutor responded to Smith's counsel's closing argument, saying:

> [I]t was very difficult to have somebody stand up in front of you folks and essentially tell you that I framed an innocent man. That's what he said. I've been doing this for 18 years, folks. I don't get up in the morning and say, "What innocent man can I frame today?" That's not what I'm all about. … That's not what all of our detectives are all about.

N.T., 7/18/16, at 161. The Commonwealth maintains the prosecutor fairly responded to Smith's counsel's closing argument, in which counsel repeatedly referred to Smith as "an innocent man," and stated, "That's how bad they [(the Commonwealth)] want their evidence to fit. To make it fit the people they arrested." Commonwealth Brief at 55-56 (quoting N.T., 7/18/16, at 56-57, 72).

> In reviewing these claims, we are cognizant that
>
> comments made by a prosecutor to a jury during closing argument "will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Williams*, 586 Pa. 553, 896 A.2d 523, 542 (2006) (citations and internal quotation marks omitted). "Like the defense, the prosecution is accorded reasonable latitude and may employ oratorical flair in arguing its version of the case to the jury." *Id.* "Prosecutorial misconduct will not be found where the comments were based on the evidence or derived from proper inferences." *Id.*
>
> Generally speaking, a prosecutor commits misconduct by improperly bolstering the credibility of a Commonwealth witness when the following two factors are met: "(1) the prosecutor must assure the jury the testimony of the government witness is credible, and (2) this assurance must be based on either the prosecutor's personal knowledge or other information not contained in the record." *Id.* at 541. We further observe that a "prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments." *Commonwealth v. Burno*, 626 Pa. 30, 94 A.3d 956, 974 (2014). "Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks. Any challenge to a prosecutor's comment must be evaluated in the context in which the comment was made." *Id.* (citation and internal quotation marks omitted). In addition, we must presume that the jury followed the trial court's instructions. *Commonwealth v. Cash*, 635 Pa. 451, 137 A.3d 1262, 1280 (2016).

*Commonwealth v. Reid*, 259 A.3d 395, 429 (Pa. 2021).

Instantly, the PCRA court thoroughly examined Appellant's claims regarding the prosecutor's allegedly improper statements, and correctly determined each lacks arguable merit. PCRA Court Opinion, 1/20/24, at 35-38. The PCRA court set forth the following analysis in its opinion:

> First, Appellant alleges that trial counsel should have objected to an isolated statement about the Pope's visit by the prosecutor[,] because the comment … suggested "the Pope's visit should lead the jury to convict." A review of the record reveals that [the prosecutor] commented on the Pope's visit while reviewing the evidence in the case. In fact, [the prosecutor] explained the evidence in his closing in response to Attorney Cooper's questioning of witnesses and inferences that there were road closures due to the Pope's visit between the murder scene and the Philadelphia parking garage where Appellant was recorded returning his grandmother's car to the garage at 11:27 p.m. [on] the night of the murder. [The prosecutor's] comment on the tragic irony of the murder during the week of the Pope's visit was a passing reference that did not constitute prosecutorial misconduct.
>
> Appellant also complains about the statement regarding the handling of … Mathews and the prosecutor's opinion that Appellant was "the shooter." Again, the complained[-]of argument constituted fair response to the defense attack o[n] Mathews's testimony and his guilty plea.
>
> Next, Appellant asserts that Attorney Cooper should have objected to [the prosecutor's] response to [Smith's counsel's closing argument] regarding Smith's alibi witness. Appellant has not provided a basis upon which Attorney Cooper could or should have objected to argument directed at a co-defendant and not to his own client. Moreover, the comment regarding [the statement of the judge in Ms. Jackson's case] about the treatment of [Ms. Jackson] referred to a fact in evidence.
>
> Appellant next contends that Attorney Cooper should have objected to the prosecutor's alleged attempt to bolster his own and the detectives' credibility. Again, a review of the transcript

reveals that the argument about which Appellant complains is in direct response to [Smith's counsel's] closing [argument,] as evidenced in the opening sentence quoted by Appellant: "[N]ow, it was hard for me to sit here and listen to a lot of what [Smith's counsel] had to say, but I have to, because that's part of my job."

Finally, in Appellant's view, Attorney Cooper was ineffective for not objecting "more thoroughly" and appellate counsel was ineffective for not arguing on appeal a claim of prosecutor[ial] misconduct [regarding] the prosecutor's "quasi-expert opinion" on how confessions "typically work." Appellant does not provide any insight into what Attorney Cooper should have added to his objection to make it more thorough…. The court understood why Attorney Cooper objected, and [the prosecutor's] statement was a fair comment on the evidence in this case. Appellant's bald statements that this claim has arguable merit, that trial counsel had no reasonable basis for failing to object, and that he suffered prejudice as a result must fail.

Further, Appellant's claim that appellate counsel should have argued the claim of prosecutorial misconduct based on the prosecutor's statements regarding the confessions also warrants no relief. Appellate counsel … raised seventeen (17) issues with subsections in the concise statement[,] and …  argued [in the Superior Court the] three (3) issues most likely to result in the granting of a new trial. This contention is frivolous.

*Id.* at 36-38 (paragraph break added).

We agree with the PCRA court's analysis, and affirm on this basis. We further agree with the Commonwealth that the trial court's instruction to the jury, *i.e.*, that arguments of counsel are not evidence, cured any potential prejudice resulting from the prosecutor's statements. *See Commonwealth v. Robinson*, 864 A.2d 460, 519 (Pa. 2004) (holding trial court's instruction that attorney's statements are not evidence cured any prejudice that may have resulted from prosecutor's comments).

In his fifth and final issue, Appellant argues Attorney Cooper rendered ineffective assistance by pursuing a trial strategy that involved arguing that Appellant and Egyniah had planned to stage her kidnapping to get her away from her parents. Appellant's Brief at 54-60. Appellant maintains this strategy "conceded Appellant's guilt in committing second-degree murder," as Appellant asserts the staged kidnapping would constitute a felony sufficient to support a second-degree murder conviction.[13] *Id.* at 55. Appellant contends the prosecutor made this very argument in his closing, in response to Attorney Cooper's theory. *Id.* at 54-55 (quoting 7/18/16, at 162-63). Appellant argues:

> This may have been a difficult case, but conceding guilt was not a reasonable defense. Trial counsel had an obligation to consider the evidence and tailor the defense to the evidence without conceding guilt. At a minimum, he could have tailored the defense to piggyback off Smith's defense[,] which was that the police either coerced or fabricated evidence as important as a confession. He also could have argued that Appellant and his friends went to pick [Egyniah] up, there was some kind of dispute that arose with her father, and Mathews, who was clearly the shooter based on the DNA, ended up breaking in and killing him during the dispute. That would at least not involve a plan to commit a burglary or kidnapping that resulted in a death. Trial counsel's strategy was unreasonable. Like Smith, [trial counsel] should have argued that his client's non-videotaped statement was coerced or fabricated.

Appellant's Brief at 60.

_____

[13] "A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.A. § 2502(b).

The Commonwealth counters that, under the theory Attorney Cooper argued at trial,

> there was no felony to support a second-degree murder conviction. There is no kidnapping if Egyniah consented to going with them, and there is no burglary if she let them in. Nor is there any conspiracy under this theory because there is no agreement to commit any crime; meaning, [Appellant] could not be held liable for Mathews' actions. Under the theory [Attorney Cooper] advanced, there was a possibility that the jury could have acquitted [Appellant]. [Appellant therefore] cannot prove that [Attorney Cooper] lacked a reasonable basis for arguing this theory.

Commonwealth Brief at 59. The Commonwealth further argues that Appellant failed to identify an alternative theory offering a greater potential for success. *Id.* at 60. The Commonwealth emphasizes our Supreme Court's holding that courts "will conclude that counsel's chosen strategy lacked a reasonable basis only if [the defendant] proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Id.* (quoting *Chmiel*, 30 A.3d at 1127 (quotation marks and citation omitted)).

The PCRA court summarized the limited evidentiary hearing held on this issue:

> Attorney Cooper testified regarding the defense theory at trial that he had discussed with [Appellant]. N.T., 7/26/22, at 13-14, 17. [Attorney Cooper] explained that the reasoning in support included: (1) the Commonwealth's cell phone tracking data evidence that placed Appellant's phone in the vicinity of [Egyniah's] home earlier in the evening [on September 27, 2015,] and again at the time of the murder[;] (2) photographs and surveillance video of Appellant driving his grandmother's car out of the garage in Philadelphia just before the time of the murder

and returning [the car] just after the murder[;] and, perhaps most importantly[;] (3) Appellant's statement to police admitting to being outside of [Egyniah's] home with the intent of staging a kidnapping[,] according to a plan he and Egyniah had concocted … so that they could be together again. *Id.* at 6-7, 10, 11-12, 23-24.

Attorney Cooper believed that admitting to staging a kidnapping with the consent and permission of the person to be "kidnapped" … was [Appellant's] best defense given the circumstances. *Id.* at 21, 23. The defense's position at trial was that [] Mathews was the person who went into the house and shot Mr. Brown[,] and Appellant had nothing to do with it. *Id.* at 14-15. Attorney Cooper testified he would not have presented such a defense if he [believed] that admitting to a staged kidnapping was a crime [that could support a conviction for] second-degree murder. *Id.* at 14-15. [During the PCRA proceedings, t]he Commonwealth agreed [that a staged kidnapping could not form the basis for a second-degree murder conviction,] despite [the prosecutor] stating otherwise in his rebuttal argument at trial. Commonwealth's Answer to Appellant's PCRA Petition, 7/30/21, at 49-50; N.T., 7/26/22, at 19-21, 32.

Appellant's PCRA counsel attempted to expand the issue raised in [the PCRA petition] several times, including asking Attorney Cooper why he had not filed a notice of alibi and pursued a similar defense as [] Smith at trial. *Id.* at 14. Notably, [PCRA] counsel did not suggest what the alibi would have been or who would have been Appellant's alibi witness. Attorney Cooper testified that … the Commonwealth did not have any cell phone evidence that [placed] Smith in the vicinity of Egyniah's home on the night of the murder[, though it did have cell phone evidence placing Appellant there]. *Id.* at 14.

Appellant also testified at the [limited evidentiary] hearing…. Despite what he had told the [trial] court under oath on July 15, 2016, Appellant claimed he and Attorney Cooper did not discuss trial strategies until a week before his trial started. *Id.* at 25-26[; *see also* N.T., 7/15/16, at 106-10 (colloquy of Appellant regarding his election not to testify)]. He denied that Attorney Cooper discussed with him before trial that the defense theory would be the planned[,] staged kidnapping that Appellant had explained to [detectives] in his statement. To the contrary, Appellant testified that he told Attorney Cooper that everything he

- 38 -

had said to the [detectives] in his statement was not true, so he told [Attorney Cooper] he did not want to "lead" with anything involving his statement. N.T., 7/26/22, at 26. Appellant asserted that Attorney Cooper did not even mention that he was going to argue the plan made with Egyniah to stage a kidnapping. *Id.* at 27.

PCRA Court Opinion, 11/20/24, 15-16 (some capitalization and citations modified).

The PCRA court made the following credibility determinations regarding the hearing testimony:

[The PCRA court] found Attorney Cooper's testimony to be very credible and afforded it significant weight based upon, among other reasons, his experience trying felony criminal cases in Montgomery County.[14] The court found Appellant's testimony less than credible[,] given his prior statements under oath that he understood everything that had been said during the trial, [that] Attorney Cooper had answered all of his questions and spent sufficient time with him in preparation for trial, and he was satisfied with Attorney Cooper's advice and representation[. The PCRA court also took into account Appellant's] current position that his entire statement to [detectives] was filled with lies.

*Id.* at 17 (footnote added).

The PCRA court determined Appellant failed to establish the lack of a reasonable basis for Attorney Cooper's chosen trial strategy:

The [PCRA c]ourt notes, as did Attorney Cooper and the Commonwealth [during trial, that] Appellant gave a statement to detectives in which he claimed that Egyniah and he had devised a plan in which they would stage Egyniah's kidnapping from her family home so that they could be together again. Attorney

_____

[14] The PCRA court noted that "Attorney Cooper has been licensed to practice law for over thirty-two (32) years, practicing as a public defender in Philadelphia, with the Federal Defenders' office, in private practice[,] and part-time with the Montgomery County Public Defenders' office." PCRA Court Opinion, 11/20/24, at 4 n.2 (citing N.T., 7/26/22, at 18).

Cooper explained this plan in his opening statement. Appellant makes much of the Commonwealth's rebuttal argument in closing that, either way, a kidnapping that leads to a homicide also constitutes second degree murder.[15] As Attorney Cooper explained throughout the trial, however, where there is a willing participant in a staged kidnapping who resides in the home and she opens the door for the intruders as part of a jointly conceived plan, there is no crime of kidnapping. Attorney Cooper denied that the theory[,] as first expressed in Appellant's statement[,] conceded guilt. Moreover, the Commonwealth did not charge Appellant with kidnapping.

In [oral] argument at the [evidentiary h]earing, [PCRA c]ounsel cited the case of **Commonwealth v. Edwards**, 903 A.2d 113 (Pa. 2006), in support of his position that "someone who has been deceived or unable to fully appreciate the risk of letting someone into the house can't actually give permission to enter." N.T., 7/26/22, at 29. However, [the PCRA c]ourt concludes that **Edwards** is inapposite to Appellant's case.

In **Edwards**, the appellant argued that the evidence was insufficient to support a conviction for burglary where his entry into the home within which he murdered three (3) adults and an unborn child was gained by permission. **Edwards**, 903 A.2d at 1147-48. Writing for the Court, Justice Castille reiterated the tenet that the license or privilege to enter can be negated by deception. **Id.** at 1148 (quoting **Commonwealth v. Thomas**, 561 A.2d 699, 705 (Pa. 1989)). In that case, Edwards told the resident who permitted Edwards' entrance into the home that he was there to pay the resident the money that Edwards owed the resident, all the while intending to kill the occupants inside, according to the Commonwealth's evidence. The **Edwards** Court held that the deception used to gain entry negated any purported license or privilege. **Id. Edwards** does not support Appellant's position that Attorney Cooper conceded guilt to second[-]degree murder in his closing argument. There was no confession to burglary or kidnapping here. [In Appellant's statement to police,

_____

[15] The trial court instructed the jury: "Neither the opening statements nor the closing arguments of counsel constitute the law that you must apply in this case, nor are they a part of the evidence and should not be considered such." N.T., 7/18/16, at 235. The trial court never instructed the jury on the crime of kidnapping, as neither defendant was charged with kidnapping.

as explained by Attorney Cooper, t]here was no deception of Egyniah regarding entry….

Appellant's failure to demonstrate that trial counsel had no reasonable basis for his action is fatal to his claim. Appellant has also failed to offer a different [strategy] with a potential for success substantially greater than the course Attorney Cooper pursued. Hence Appellant's … issue merits no relief.

PCRA Court Opinion, 11/20/24, at 39-40 (footnote added; some citations modified).

We are bound by the PCRA court's credibility determinations, and our review discloses record support for its finding that Attorney Cooper had a reasonable basis for pursuing his chosen trial strategy. We agree with the PCRA court that Attorney Cooper's theory did not concede the commission of a felony sufficient to form the basis of a second-degree murder conviction. We further agree that Appellant failed to establish "that an alternative [strategy] not chosen offered a potential for success substantially greater than the course actually pursued." *Chmiel*, 30 A.3d at 1127.

Appellant identifies nothing in the record to support a theory that police "coerced or fabricated" Appellant's statement, or that "Appellant and his friends went to pick [Egyniah] up, there was some kind of dispute that arose with her father, and Mathews … ended up breaking in and killing him during the dispute." Appellant's Brief at 60. We observe that the PCRA court granted Appellant an evidentiary hearing on this issue, and Appellant failed to adduce any evidence to suggest that an alternative strategy had any greater potential for success. Appellant's bald assertion that Attorney Cooper "could have …

piggyback[ed] off Smith's defense," *id.*, evinces Appellant's steadfast refusal to acknowledge that the evidence against him was different from—and far stronger than—the evidence against Smith. As Appellant failed to demonstrate that Attorney Cooper had no reasonable basis to pursue his chosen trial strategy, his final ineffectiveness claim fails. *See Chmiel*, 30 A.3d at 1127.

For the reasons set forth above, none of Appellant's ineffectiveness claims merits relief, and we therefore affirm the PCRA court's order dismissing Appellant's petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/25/2025